UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

HARVEY L. FAIRLEY,

        Plaintiff,                Case No. 1:13-cv-1376

v.                                    Honorable Gordon J. Quist

MARY BERGHUIS et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

## Factual Allegations

Plaintiff Harvey L. Fairley is a state prisoner incarcerated by the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility (LRF), which

is where the events giving rise to his complaint occurred. Defendants are MDOC employees. The following defendants work at LRF: Warden Mary Berghuis, Deputy Warden Jim Verboncouer, Librarian Rex Miller, and Secretary Deb Plunkett. Plaintiff also sues Melody Wallace, the Manager for the Policy and Rules Development Section of the MDOC, and Cheryl Groves, who is part of the Central Facilities Administration of the MDOC.

Plaintiff alleges that all six Defendants deliberately refused to purchase or make available law books that are mandated by MDOC Policy Directive 05.03.115. The library at LRF is missing several books, including: "U.S. Supreme Court Shepards, . . . Shepards for Federal Statutes, [and] Court Rules or Constitutional provisio[n]s from 2010-2013." (Compl., docket #1, Page ID#4.) The library is also lacking "reference material such as A.L.R.'s, Am Jur'2d's or M.L.P.'s." (*Id.*) In addition, the library has "no digest material [s]ince November, 2012," because Defendant Wallace told prison librarians that the "West Federal Digest 5th edition" is "not required." (*Id.*) Also, Defendant Groves allegedly cancelled subscriptions to various materials, including the "SADO Criminal Defense Newsletters, SADO Defender Trial Book, SADO Motions Book, SADO Sentencing and Punishment Book, and the SADO Habeas Corpus Book," in anticipation of an electronic law library, but the electronic library is not operational. (*Id.*)

As a result of the foregoing deficiencies in the law library, Plaintiff alleges that he prepared a "Sub-Standard pleading" that was denied by the Court of Appeals for the Sixth Circuit on June 18, 2013, for "failure to state any 'New' law" supporting his position. (*Id.*)

On August 4, 2013, Plaintiff wrote to Deputy Warden Verboncouer complaining about the denial of his petition and noting that the law library was missing "three[ ]years of United States Supreme Court Shepards." (Pl.'s Letter to Verboncouer, Ex. 1 to Compl., docket #1-1, Page ID#27.) Plaintiff did not receive a response, so he filed a grievance about the issue. Defendant

Verboncouer responded to the grievance, noting that the prison's vendor had not supplied the materials since 2012, even though they had been ordered. (Step I Response to Grievance No. 13080123014-D, docket #1-1, Page ID#30.) Prison officials requested them again in response to Plaintiff's grievance and were able to receive a copy the following day, September 12, 2013. (*Id.* at Page ID##29-30.)

Plaintiff appealed the grievance response, and his appeal was rejected by Warden Berghuis because the issue appeared to be resolved. Plaintiff then appealed the grievance response to step III of the grievance process, complaining that the newly-received "Shepards" materials cite only "Lexis Nexis" materials, which are not available in the law library. (Compl., Page ID#5.) Plaintiff claims that the procurement specialist, Defendant Plunkett, failed to follow up on the prison's procurement requests. Plaintiff never received a response to his appeal.

Based on the foregoing allegations, Plaintiff contends that Defendants' failure to maintain adequate legal resources at the prison library denied him his constitutional right of access to the courts. As relief, he seeks damages, a declaratory judgment that the law library is inadequate, an order requiring the MDOC to bring its library into compliance, and an order allowing him to re-file his petition with the Court of Appeals for the Sixth Circuit.

## Discussion

I. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Access to courts

Plaintiff claims that he has been denied access to the courts because the inadequate legal resources at the prison library prevented him from preparing an adequate motion before the court of appeals for the Sixth Circuit. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents with notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's accessibility to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415

(2002) (citing *Lewis*, 518 U.S. at 353 & n.3). Where, as here, "the access claim . . . looks backward,[1] the complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." *Id.* at 415. The Court noted that the "predicate claim [should] be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id.* at 416.

The details of Plaintiff's underlying claims are not set forth in his complaint, as required by *Christopher*; however, there are some details in the Sixth Circuit's order, which is attached to the complaint. (*See* docket #1-1, Page ID#31.) According to that order, Plaintiff sought permission to file a second or successive habeas petition under 28 U.S.C. § 2254. *See In re Fairley*, No. 12-2514 (6th Cir. June 18, 2013). He was previously convicted of two offenses in 1999, and he filed a petition for a writ of habeas corpus in 2003, which was denied. *Id.* He then requested permission to file a "second or successive" petition in 2010, but the Sixth Circuit denied his request. *Id.*; *see* 28 U.S.C. § 2244(b)(3)(A) (requiring a petitioner to seek authorization from the court of appeals before filing a "second or successive" petition in the district court). He then filed another motion for authorization to file a second or successive habeas corpus petition, which was the subject of the Sixth Circuit's order. In the latter motion, he asserted that:

> 1) his "arrest, conviction and subsequent incarceration was [sic] all obtained outside the bounds of the law", and 2) he was denied due process and a fair trial "when the trial court arraigned [him] in circuit court despite the fact that

---

[1] Backward-looking claims "do not look forward to a class of future litigation, but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable. The ultimate object of these sorts of access claims . . . is not the judgment in a further lawsuit, but simply the judgment in the access claim itself, in providing relief obtainable in no other suit in the future." *Christopher*, 536 U.S. at 414 (footnotes omitted). In contrast, the "essence" of a forward-looking claim "is that official action is presently denying an opportunity to litigate for a class of potential plaintiffs. The opportunity has not been lost for all time, however, but only in the short term; the object of the denial-of-access suit . . . is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Id.* at 413.

subject matter jurisdiction still vested in the district court, thus, creating a jurisdictional defect which not only voids [his] criminal convictions, but demands [his] immediate release from custody."

*Id.*

As the Sixth Circuit explained, an applicant seeking authorization to file a second or successive petition must make a prima facie showing that his petition contains a claim that is premised on:

> 1) a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable", or 2) new facts that "could not have been discovered previously through the exercise of due diligence" and that, "if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."

*Id.* (citing 28 U.S.C. § 2244(b)(2), (b)(3)(C)).

The Sixth Circuit denied Plaintiff's motion because

> [he] failed to show that [his claims] rely upon a new, retroactively applicable "rule of constitutional law" or are based upon newly discovered facts establishing that "no reasonable factfinder would have found him guilty of" the crimes for which he was convicted. *See* 28 U.S.C. § 2254(b)(2); *Keith v. Bobby*, 551 F.3d 555, 557 (6th Cir. 2009).
>
> Fairley does not cite any new United States Supreme Court decisions to support his claims. Instead, Fairley's arguments concern state law jurisdictional issues. "Determination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary." *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976). Nor does Fairley present any new evidence. Rather, his claims are based upon facts that he should have known at the time of his convictions.

*Id.*

Accepting the details set forth in the Sixth Circuit's order as part of Plaintiff's pleadings in this action, and assuming that such details are specific enough to satisfy the requirements of *Christopher*, 536 U.S. at 415-16, Plaintiff has not adequately alleged that the

- 7 -

prison's lack of legal resources were the cause of injury to a nonfrivolous legal claim. Plaintiff apparently believes that his motion would have been successful if he had been able to cite a "new" United States Supreme Court decision, but he is mistaken. According to the Sixth Circuit, his claims concerned "state law jurisdictional issues," which are not cognizable in a habeas corpus action. *See Fairley*, No. 12-2514 (citing *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976)); *see also Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). In other words, Plaintiff's motion was denied because his claims were facially meritless, not because he lacked sufficient legal resources to present them. There are no "new" Supreme Court decisions that would have allowed a federal court to review non-cognizable state-law claims. Thus, even if Plaintiff had access to the materials he desired, his motion would not have succeeded. Consequently, he has not alleged an injury that would support an access-to-courts claim.

### B. State law / prison policy

To the extent Plaintiff asserts that the resources in the prison library do not comply with state law or prison policy, he does not state a § 1983 claim. An alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

II.    Supplemental jurisdiction

To the extent that Plaintiff's complaint presents claims under state law, this Court declines to exercise jurisdiction over such claims because Plaintiff's federal claims will be dismissed. Generally, "[w]here a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits." *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998) (citing *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claims, if any, will be dismissed without prejudice.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action under § 1983 will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state-law claims, if any, will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611

(6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: March 5, 2014                                /s/ Gordon J. Quist
                                                    GORDON J. QUIST
                                                    UNITED STATES DISTRICT JUDGE